

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAM P. ELLIOTT )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FOOD LION, LLC. )<br>)<br>Defendant. )<br>) | Civil Action No. 1:12-cv-1426 |

### MEMORANDUM OPINION

This negligence action arises from an alleged fall by the Plaintiff outside of a grocery store owned and operated by the Defendant. The matter comes before the Court on the parties' cross-motions for summary judgment as well as a number of additional pretrial motions. The Court heard argument from the parties on March 14, 2014. For the reasons stated below, the Plaintiff's Motion for Summary Judgment is DENIED. The Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

### BACKGROUND

The Plaintiff, William P. Elliott, is a Virginia resident. The Defendant, Food Lion, is a North Carolina Limited Liability Company operating a number of grocery stores in the Commonwealth of Virginia. The events giving rise to this action occurred on July 22, 2012. On that day Elliott entered the Food Lion store located in Sterling, Virginia. Elliott alleges that he had no problems entering the store. In particular, Elliott claims he walked up a ramp entering the store. His complaint states the walkway leading to the store entrance was "clean and dry; there was no hose or any other object on it. There were no markings or warnings of any sort around the ramp or store." *See* Plaintiff's Complaint, Dkt. No. 1 at ¶ 9. The crux of Elliott's complaint states

1

that when he exited the store "his shopping cart struck [a] hose [and Elliott] was thrown forward over his shopping cart and down the ramp striking his right shoulder on the cement causing an acute fracture of the proximate shaft of his right humerus in the region of his reverse total shoulder arthroplasty." *Id.* at ¶ 2. Elliott initiated the current action seeking relief for these injuries, which he claims were the proximate result of Food Lion's negligence, conscious disregard, and reckless indifference to the consequences of placing the hose in front of the store entrance. In particular, Elliott argues Food Lion should be liable for failing to inspect the ramp, failing to warn him of the danger present, failing to keep the ramp free of obstructions, and creating a hazardous condition.

Videotape footage recorded on a Food Lion surveillance camera calls into question portions of Elliott's complaint. The footage captures a Food Lion employee taking what appears to be a black garden hose and laying it across the walkway leading to the store's entrance. The employee then proceeds to use the hose to begin cleaning the entryway and surrounding area. For the next several minutes the employee continues to clean the area while several store patrons travel over the visible hose as they enter and exit the sore. At around 11:12am Elliott is seen entering the store. He appears to walk from the parking lot to the left of the entrance towards a trash can several feet in front of the entrance. He then enters straight into the store, walking directly over the hose in the process.

Approximately fourteen minutes later Elliott can be seen exiting the store while pushing a shopping cart in front of him. The garden hose is still visible to the camera, lying across the walkway Elliott took to enter the store. Instead of walking directly out of the store towards the trashcan along the same path he took upon entering, Elliott takes an immediate left turn on the walkway as soon as he exits the store's final set of sliding doors. To the left of these doors stands

a large brick column. When Elliott exits the store and turns left he walks behind the column and is no longer visible to the camera. A few seconds later Elliott can be seen reentering the store without the shopping cart and rubbing his right arm in apparent pain.

## DISCUSSION

### I. Plaintiff's Motion to Amend Complaint

Elliott moves to amend his complaint pursuant to Fed. R. Civ. P. 15(a) in order to add a claim of negligence *per se*. Generally a plaintiff is freely given leave to amend a complaint under Rule 15(a) unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment [is] futile." *See Steinburg v. Chesterfield Cty. Planning Com'n.*, 527 F.3d 377, 390 (*quoting Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). Elliott's attempt to add a claim is a clear exception to the general rule in favor of amending because the proposed amendment is both futile and would be prejudicial to Food Lion.

The alleged facts giving rise to Elliott's entire law suit were known to him the moment he sustained his claimed injury; July 22, 2012, to be exact. Elliott filed his complaint on December 11, 2012. The parties agreed to a discovery schedule which provided a discovery deadline of October 25, 2013. The motion to amend was filed on February 3, 2014; four months after discovery closed, almost fourteen months after the complaint was filed, and close to nineteen months after Elliott sustained his injury. To reopen discovery at this late stage to allow Elliott to pursue a legal claim that appears futile would be extremely prejudicial to Food Lion. *See Laber*, 438 F.3d at 426 ("whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing.").

A reasonable delay alone would not prevent the Court from granting Elliott's request to amend. *See Davis v. Piper Aircraft Corp.*, 615 F.3d 606, 613 (4th Cir. 1980) ("Delay alone

3

however, without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."). But Elliott's delay is both prejudicial and unreasonable. Elliott argues that he was not able to raise this negligence *per se* claim at any point in the last year because the claim was not apparent until the parties began discovery. He simultaneously argues that if the amendment is allowed, Food Lion will not require any additional discovery to mount its defense. Neither proposition has much merit. Certainly Elliott could have brought a claim of negligence *per se* the moment he filed his initial complaint. Likewise, if the amendment were allowed, Food Lion would clearly deserve additional time to conduct its own discovery, investigation, and expert research in order to defend against the new claim.

Elliott's negligence *per se* claim is also futile. In order to succeed on this claim Elliott must show that: (i) Food Lion violated a statute that was enacted for public safety, (ii) he belongs to the class of persons the statute was meant to protect and the harm he suffered was of the type the statute was designed to protect against, and (iii) the statutory violation was a proximate cause of his injury. *See Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77 (2000) (internal citations omitted). Elliott argues that Food Lion violated a wide array of random building, construction, and fire codes. But Elliott provides few reasons and even less case law for the proposition that he belongs to the class of persons meant to be protected by those codes or that his alleged injury was of the type the codes are intended to protect against. Consequently, based on the facts of this case, Elliott's negligence *per se* claim would be futile.

Because of the significant delay, and consequences of that delay, Food Lion would suffer prejudice if Elliott was allowed to amend his complaint to add a futile claim. Elliott's request to amend is therefore denied.

## II. Cross-Motions for Summary Judgment

### a) Standard of Review

Summary judgment should be granted where the evidence in the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court explained, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Finally, in making a summary judgment determination, the Court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### b) Choice of Law

A federal district court exercising diversity jurisdiction applies the choice of law rules of the forum state. *See generally Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Virginia applies the principle of *lex loci delicti*, the place of the wrong, to tort actions. *See Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998) (citing *Jones v. R.S. Jones and Assoc. Inc.*, 246 Va. 3 (1993); *Buchanan v. Doe*, 246 Va. 67 (1993)). The parties agree the alleged tort and corresponding injury occurred in Virginia, therefore Virginia law applies.

### c) Negligence

To prevail on his negligence claims Elliott must show that Food Lion breached a duty it owed to him which was the proximate cause of his injury. *See Stephens v. Virginia Elec. &*

5

*Power Co.*, 184 Va. 94, 99 (1945). In this particular case Food Lion owed Elliott the duty of using ordinary care to have the entryway to its store reasonably safe for Elliott's visit. *See, e.g., Tazewell Supply Co. v. Turner*, 231 Va. 93, 95 (1972) (citing a collection of Virginia cases reviewing the standard for premises liability). Ordinary care required Food Lion to warn Elliott of latent dangers which were or should have been known to Food Lion, and which were unknown to Elliott. No notice or warning was required, however, if the alleged dangerous condition was "open and obvious to a person exercising reasonable care for his own safety." *Id.*

The facts and well-settled premises liability standards demonstrate the central question in this litigation is whether the hose that allegedly caused Elliott's injury was open and obvious to a person exercising reasonable care. Whether a condition is open and obvious is generally a question of fact to be decided by a jury. *See Newcomb v. Food Lion*, Case No. 95-3044, 94 F.3d 642, *2 (4th Cir. 1996) (unpublished opinion). Given that, summary judgment would be appropriate only if any and all reasonable jurors would infer that the hose was open and obvious to Elliott at the moment of the alleged fall. The Court cannot make such a finding.

As demonstrated above, the most reliable evidence at this stage of the proceedings is the Food Lion video surveillance camera recoding. This footage captures a significant amount of relevant information. For example, it demonstrates that the hose was clearly visible on the path Elliott took to *enter* the store. Because of the large brick wall next to the sliding doors and the path Elliott took to *exit* the store, however, the footage does not capture the exact moment of his accident. With Elliott maintaining that the hose was not visible during his fall, and no direct evidence indicating otherwise, a reasonable juror could infer that the hose was not open and obvious at the specific location where the alleged fall took place. No other evidence in the record definitively resolves this question. Simply put, there are genuine issues of material fact that bar

the Court from granting summary judgment in favor of either party with regards to Elliott's negligence claim.

### d) Contributory Negligence

Food Lion argues that Elliott was contributorily negligent. To find Elliott liable for contributory negligence Food Lion must prove not only that the hose was open and obvious, but that Elliott failed to exercise reasonable care when he exited the store. *See Scott v. City of Lynchburg*, 214 Va. 64, 66-68 (1991). The gaps in the video surveillance footage control the Court's analysis of this claim on summary judgment as well; based on the record it is unclear whether the hose was open and obvious, or whether Elliott exercised reasonable care when exiting the store. Accordingly, there are genuine issues of material fact as to whether Elliott was contributorily negligent.

### e) Punitive Damages

Elliott seeks significant punitive damages, alleging not only that Food Lion was negligent but that its negligence was willful and wanton. *See Infant C. v. Boy Scouts of Am., Inc.*, 239 Va. 572, 580-84 (1990) (punitive damages are warranted by negligence "which is so willful or wanton as to evince a conscious disregard of the rights of others" (citing *Booth v. Robertson*, 236 Va. 269, 273 (1988))). In Virginia willful and wanton negligence is characterized as "action taken in conscious disregard of another's rights, or with reckless indifference to the consequences that the defendant is aware, from his knowledge of existing circumstances and conditions, would probably result from his conduct and cause injury to another." *See, e.g., Alfonso v. Robinson*, 257 Va. 540, 545 (1999) (citations omitted). A court reviewing a claim of willful and wanton negligence must evaluate a defendant's entire conduct in light of all the circumstances in which that conduct occurred. *Id.* Willful and wanton conduct can be

differentiated from gross or ordinary negligence in that it "involves some type of egregious conduct—conduct going beyond that which shocks fair-minded people." *See Harris v. Harman*, 253 Va. 336, 341-42 (1997). This sort of extreme negligence also requires "actual or constructive consciousness that injury will result." *Alfonso*, 257 Va. at 545 (citing *Infant C.*, 239 Va. at 580-81). This requirement however does not necessitate a showing of ill will. *Id.*

While the video surveillance footage may not allow the Court to determine whether the hose was open and obvious at the exact location where Elliott allegedly fell, or whether Elliott was contributorily negligent at that moment, it does provide clear evidence that Food Lion's actions were not egregious enough to rise to the level of willful or wanton negligence. The footage captures several people of different ages and dispositions walking over the hose as Food Lion employees use the hose to clean the store's entryway. None of them appear shocked, nor do they seem to believe any Food Lion employees are acting egregiously.

In support of his claim for punitive damages Elliott points to statements by Food Lion employees noting that they would have warned customers of the hose's placement. Even putting aside the fact these statements were made in depositions long after Elliott's alleged fall, they alone do not provide any evidence that Food Lion acted in a wilfully or wantonly negligent manner. Elliott's inability to provide any other evidence supporting this claim, combined with the clear evidence shown in the video footage, requires the Court to find as a matter of law that Food Lion is not liable for willful or wanton negligence. Elliott's claim for punitive damages is therefore dismissed.

## III. Motions *in Limine*

### a) Motion to Exclude Video Surveillance Tape

Elliott argues the video surveillance footage described above is inadmissible evidence because it is irrelevant, prejudicial, and will confuse the jury. None of these arguments are convincing.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid. 401(a). As noted above, it is true the video surveillance tape does not capture the placement of the hose at the exact moment of Elliott's alleged fall. The video footage is relevant nonetheless. By way of example, in his complaint Elliott alleged that the hose was moved and placed across the store's entryway *after he had entered the store*. The video footage clearly refutes this statement. At the very least this goes to Elliott's credibility. To provide another example, the video also offers strong circumstantial evidence of whether the hose was open and obvious at the moment of Elliott's alleged fall. These examples by no way provide an exhaustive list of reasons why the video footage is relevant.

The Federal Rules of Evidence allow a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Contrary to Elliott's arguments, none of these dangers are present with regards to the surveillance video footage. Any prejudice Elliott would suffer as a result of a jury seeing the footage would not be unfair, it would merely provide clear circumstantial evidence of Elliott's knowledge as well as direct evidence of Food Lion's actions. Nor would this important evidence confuse the jury. The video will serve only to clarify certain issues leading up to the

9

alleged injury, while still making it clear to the jury that the moment of Elliott's fall and placement of the hose at the site of the fall were not captured on the surveillance camera.

For these reasons Elliott's motion to exclude the video surveillance camera footage is denied.

### b) Motions to Exclude Experts

Both parties have submitted motions seeking to exclude testimony from the opposing party's expert witnesses. The admissibility of expert testimony is governed by Fed. R. Evid. 702. This rule allows such testimony if it concerns scientific, technical, or other specialized knowledge and will aid the jury in understanding a fact at issue. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260-61 (4th Cir. 1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). This in turn requires a two-part inquiry. First, the Court must determine if the "reasoning or methodology underlying the expert's proffered opinion is reliable." *Id.* Second, the Court must inquire "whether the opinion is relevant to the facts at issue." *Id.*

#### i. Medical Experts

Each party intends to offer multiple medical experts in this case. The need for such a significant amount of expert testimony arises from Elliott's preexisting medical conditions. Prior to the incident outside of the Food Lion store Elliott had, among other ailments, longstanding cervical problems and issues with his nerve roots in his right shoulder. The parties plan on calling experts to either dispel or confirm the causal connection between the alleged fall and Elliott's current medical ailments, as well as the extent of corresponding damages. Each party offers two doctors to testify on these and other related topics.

Elliott plans to call Dr. Jayantilal Bhimani and Dr. Juliet Hou as his expert medical witnesses. Dr. Bhimani diagnosed Elliott with cervical myopathy in February of 2012. Food Lion claims this testimony is improper because Dr. Bhimani was not aware of Elliott's alleged accident at the store. Dr. Bhimani also does not suggest that Elliott's recent treatment is related to any such fall.

Dr. Hou examined Elliott in March of 2012 and found that he had restricted motion in his cervical spine and right shoulder, along with atrophy of that shoulder and other related conditions. Food Lion points out that Dr. Hou could not definitively state what caused these ailments and could not provide an opinion within a reasonable degree of medical certainty that they were at all related to the alleged fall.

Food Lion plans on calling Dr. John Taylor and Dr. Keith Lawhorn. Dr. Taylor found that Elliott had a severe preexisting condition and that there is no causal connection between the aggravation of that condition and the fall. Elliott argues that Dr. Taylor, a neurologist, is not trained to study spinal issues and did not conduct the proper tests for diagnosing Elliott's condition.

Dr. Lawhorn analyzed the physical restraints currently placed on Elliott by his ailments. Elliott contends this diagnosis is improper because it is based on insufficient bases.

At their core, each party's objection to the opposing party's medical experts boils down to an attack on methodology. In particular, the parties object to the doctors not allotting appropriate significance to the differing potential causes of Elliott's current condition. Such objections do not render the expert testimony inadmissible, they merely affect the weight the jury should give to each expert's testimony. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) ("medical expert's opinion based upon differential diagnosis normally should not

be excluded because the expert has failed to rule out every possible alternative cause of a plaintiff's illness." (citing *Westberry*, 178 F.3d at 265)). Consequently, the parties' respective motions to exclude the four medical experts are denied.

*ii. Non-Medical Experts*

Elliott also intends to call two additional, non-medical experts to testify on his behalf. The first, Russell L. Lamb, is set to testify about Elliott's lost wages and future income. The second, Janice L. Thomas, is "a health and safety expert" set to testify about certain safety standards. Food Lion seeks to exclude both experts from testifying.

Food Lion's main objection to Dr. Lamb's testimony is that he is not a medical doctor and thus cannot testify about how Elliott's medical issues relate to his future lost earnings. Elliott argues that Lamb will only testify about such damages on the assumption that Elliott will win his claim for liability. Elliott is correct that Lamb may appropriately offer expert testimony in this confined manner. *See, e.g., Williams v. Illinois*, 132 S.Ct. 2221, 2228 (2012) (in appropriate cases an expert may testify and "explain the facts on which is or her opinion is based without testifying to the truth of those facts.").

Finally, Elliott seeks to offer the testimony of Thomas on issues related to: (i) certain building and safety codes; (ii) certain industry standards of care; and/or (iii) the appropriate standard of care that Food Lion should have exercised when it placed the hose in the store entryway. Food Lion is right that Thomas's proposed testimony invades the jury's province.

To determine whether Food Lion is liable for negligence the jury will need to analyze whether Food Lion owed a duty to Elliott and breached that duty. As articulated above, the duty Food Lion had is clear. Of importance here, determining whether the hose was open and obvious or whether Elliott used reasonable care are not inquiries requiring specialized skill or knowledge.

*See Bd. of Supervisors of Fairfax Cnty. v. Lake Servs., Inc.*, 247 Va. 293, 297 (1994) ("expert testimony is admissible only when specialized skill and knowledge are required to evaluate the merits of a claim." (internal citations omitted)). Rather, these are "matters of common knowledge" and subjects any reasonable juror of ordinary intelligence will be able to form an opinion on without the assistance of expert testimony. *See id.* Accordingly, Thomas's testimony will not be allowed at trial.

### c) Motions to Exclude Evidence of the Defendant's Private Rules

Food Lion also moves to exclude Elliott from offering evidence of Food Lion's private rules at trial. In opposition, Elliott argues that "[u]nder both state and federal evidentiary standards industry standards, common practices, store practices, and statutes or regulations are admissible standards to assist the fact finder in determining whether or not Food Lion exercised ordinary care." *See* Dkt. No. 132 at 2. There is no legal support for Elliott's broad proposition.

Virginia has long held that "a person cannot, by the adoption of private rules, fix the standard of his duties to others." *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) (citing *Virginia Ry. & Power Co. v. Godsey*, 117 Va. 167 (1915)). Furthermore, the Fourth Circuit has found Virginia's precedent banning private rules as evidence of negligent conduct is "sufficiently bound-up with state policy so as to require its application in federal court." *Id.* This Court is therefore obligated to enforce the clear rule rendering any evidence of Food Lion's private rules inadmissible to the extent Elliott offers them for a purpose "subsumed within the issue of the requisite standard of care." *See McDonald v. Wal-Mart Stores East, LP*, Case. No. 3:07-cv-425, 2008 WL 153782, at *5 (E.D. Va. Jan. 14, 2008) (citing *Klein v. Boyle*, No.92-1838, 1993 WL 426360, at *1 (4th Cir. Oct. 22, 1993)).

## CONCLUSION

For the reasons stated above the Court finds there are genuine issues of material fact as to whether Food Lion was negligent as well as whether Elliott was contributorily negligent. The Court also finds as a matter of law that Food Lion's conduct was not willful or wanton and thus dismisses Elliott's claim for punitive damages. Therefore Elliott's Motion for Summary Judgment is DENIED and Food Lion's Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART. Given the futility of a negligence *per se* claim and the prejudice Food Lion would suffer were the Court to grant Elliot's Motion to Amend, that motion is DENIED. The Court also makes the above findings regarding the multiple pending motions *in limine*.

A corresponding order shall issue.

April 10, 2014
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge